UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ERIC JAMES MAGES,

                      Plaintiff,

      -vs-                    **No. 1:14-CV-00828 (MAT)**
                                        **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                      Defendant.

---

## I. Introduction

Represented by counsel, Eric James Mages ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II. Procedural History

Plaintiff (d/o/b September 20, 1968) applied for DIB in June 2011, alleging disability beginning June 13, 2006. After his application was denied, plaintiff requested a hearing, which was held before administrative law judge William Weir ("the ALJ") on

January 18, 2013. The ALJ issued an unfavorable decision on June 24, 2013. The Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 13, 2006, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: alcohol abuse disorder; post-traumatic stress disorder ("PTSD"); left ankle pain status post injury and surgery; low back pain; and obstructive sleep apnea.

At step three, the ALJ found that plaintiff's "impairments, including the alcohol abuse disorder, [met] sections 12.06 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 [the listings]." T. 20. However, the ALJ found that if plaintiff "stopped the alcohol abuse," his impairments would be severe but would not meet or medically equal any listed impairment. Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), "except that he would be limited to simple, repetitive and routine tasks with no more than occasional interaction with co-workers, supervisors, and the public." T. 22. At step four, the ALJ determined that, even if plaintiff stopped alcohol abuse, he would be unable to perform past relevant work. At

2

step five, the ALJ found that if plaintiff stopped alcohol abuse, considering plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that he could perform. Accordingly, the ALJ found that plaintiff was not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A. Step Two Finding**

Plaintiff contends that the ALJ erred at step two of the sequential evaluation when he did not find plaintiff's generalized anxiety disorder to be a severe impairment. Plaintiff further argues that the ALJ erred by failing to adequately consider the combined effects of plaintiff's anxiety disorder and PTSD throughout the balance of the sequential evaluation process. For the reasons set forth below, the Court agrees.

It is well-established that "the standard for a finding of severity under [s]tep [t]wo of the sequential analysis is *de*

*minimis* and is intended only to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Dixon v. Shalala, 54 F.3d 1019, 1023 (2d Cir. 1995)). "An impairment is 'not severe' if the medical evidence establishes only a slight abnormality or combination of slight abnormalities which do not significantly limit an individual's ability to perform basic work-related activities." Logan v. Astrue, 2008 WL 4145515, *6 (S.D.N.Y. Sept. 8, 2008) (citing 20 C .F.R. § 404.1521); see also SSR 85-28.

In this case, as plaintiff points out, there was ample evidence that plaintiff suffered not only from PTSD as the ALJ found, but also from anxiety disorder. This diagnosis was recorded on a number of occasions in plaintiff's mental health treatment notes. These treatment notes, in addition to records of multiple VA hospital admissions secondary to plaintiff's alcohol abuse, record diagnoses and symptoms of generalized anxiety disorder and prescription of medications for this condition. See, e.g., T. 712 (noting diagnosis of "[a]nxiety/depression"), 726, 729-31 (noting diagnosis of anxiety disorder not otherwise specified ["NOS"], and recording anxiety symptoms), 735-36, 738 (prescribing Sertraline, an SSRI often prescribed for depression and anxiety), 933 (noting that anxiety and depression were alcohol abuse "relapse triggers"), 1024, 1326-27, 1474-75 (noting anxiety symptoms and recommending

4

cognitive-behavioral therapy for "reducing anxiety and alcohol abuse"); 1541 (noting diagnosis of generalized anxiety disorder).

The ALJ found plaintiff's PTSD to be a severe impairment, but did not discuss plaintiff's diagnosis of generalized anxiety disorder. Significantly, the ALJ did not explain why he found that plaintiff's anxiety disorder was not a severe impairment. See Gray v. Astrue, 2009 WL 1598798, *6 (S.D.N.Y. June 8, 2009) ("Clarity in explaining the reason why a claimant fails to show that she is disabled assists the claimant in responding to the SSA's findings, and assists the claimant in either appealing those findings, or refiling her claim, if appropriate.").

Although the record is voluminous, totaling 1594 pages, the ALJ's decision contains a very perfunctory analysis of plaintiff's mental health treatment, noting that "all of [plaintiff's] psychiatric hospitalizations have been related to alcohol abuse," T. 21, and that plaintiff "testified that he [did not go] to the hospital for panic symptoms without drinking." T. 23. Moreover, throughout the balance of the decision, the ALJ made little reference to the significance of plaintiff's anxiety or PTSD symptoms, apparently concluding that these symptoms were significant only when coinciding with alcohol abuse. It is thus not clear from the decision whether the ALJ adequately considered plaintiff's treatment and diagnoses for these mental health conditions. See, e.g., Daily v. Comm'r of Soc. Sec., 2016 WL

5

1128136, *7 (N.D.N.Y. Feb. 29, 2016), report and recommendation adopted, 2016 WL 1122067 (N.D.N.Y. Mar. 22, 2016) ("[T]he Court is unable to 'glean' the ALJ's rationale because the ALJ's decision failed to discuss many of the findings in the record.") (quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Moreover, the error was not harmless as the Commissioner argues, because the ALJ must consider all of plaintiff's impairments, whether severe or non-severe, in reaching his decision. See, e.g., Hamilton v. Colvin, 8 F. Supp. 3d 232, 242 (N.D.N.Y.2013) (holding that the ALJ's step-two error was not harmless where there was "no indication in the decision that the ALJ considered the impact of [p]laintiff's [impairment] on his ability to perform work-related functions"); see also Jackson v. Colvin, 2016 WL 1578748, at *4 (W.D.N.Y. Apr. 20, 2016) (noting that the ALJ must "consider all of plaintiff's impairments, both severe and non-severe, when reaching an RFC determination") (citing 20 C.F.R. § 404.1545(a)(2)).

Accordingly, this case is reversed and remanded for further consideration of plaintiff's mental health impairments, including his diagnoses of generalized anxiety disorder and PTSD. On remand, the ALJ is instructed to specifically evaluate whether plaintiff's generalized anxiety disorder is a severe impairment within the meaning of the regulations. Regardless of whether that particular impairment is found to be severe or non-severe, however, the ALJ must "consider all of plaintiff's impairments, both severe and

6

non-severe, when reaching an RFC determination." Jackson, 2016 WL 1578748, at *4.

B.  **RFC Finding**

Plaintiff contends that the ALJ's physical RFC finding is unsupported by substantial evidence. Specifically, plaintiff argues that the consulting examination of Dr. Charles Schwab was "excessively vague" in its opinion that plaintiff had "mild restriction to bending, lifting, and carrying." T. 379. Plaintiff argues that this opinion did not support the ALJ's finding that plaintiff was capable of performing sedentary work. For the reasons that follow, the Court disagrees that Dr. Schwab's opinion was overly vague in terms of the limitations expressed in that opinion, but nevertheless finds that the ALJ did not have substantial evidence upon which to base his conclusion that plaintiff could perform all of the exertional requirements of sedentary work.

Initially, the Court notes that the two Second Circuit cases cited by plaintiff, Curry v. Apfel, 209 F.3d 117, 123-24 (2d Cir. 2000), superseded by statute on other grounds, 20 C.F.R. § 416.960(c)(2), and Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013), are distinguishable from this case. In Curry, the "only evidence supporting the ALJ's conclusion that [plaintiff] 'retain[ed] the [RFC] to perform . . . at least sedentary work,' [was] [a consulting examiner's] opinion that [plaintiff]'s 'impairment was: [l]ifting and carrying moderate; standing and walking, pushing and pulling and sitting mild.'" 209 F.3d at 123. The Court went on to emphasize that the physician's "use of the

7

terms 'moderate' and 'mild,' *without additional information*, [did] not permit the ALJ . . . to make the necessary inference that [plaintiff could] perform the exertional requirements of sedentary work." Id. (emphasis added). In Selian, the Court found that a consulting examiner's opinion that the plaintiff "should be able to lift . . . objects of a mild degree of weight on an intermittent basis" was "remarkably vague." 708 F.3d at 421.

Neither Curry nor Selian bind this Court to a conclusion that Dr. Arora's opinion was impermissibly vague based simply on use of the word "moderate." Selian is inapposite to consideration of the instant case because the term "mild" was used in that case to refer to the degree of weight, not the plaintiff's degree of limitation. Moreover, as this Court has noted (Siragusa, J.), "Curry does not stand for the broad proposition that a medical source opinion which uses terms like 'mild' or 'moderate' is *always* too vague to constitute substantial evidence." Richardson v. Colvin, 2016 WL 3179902, *7 (W.D.N.Y. June 8, 2016) (emphasis added). While the Court in Curry noted that the ALJ had "no additional information" besides the vague opinion, "courts have held that Curry is inapplicable, even though a medical examiner uses terms like 'mild' or moderate,' if the examiner conducts a thorough examination and explains the basis for the opinion." Richardson, 2016 WL 3179902, at *7; see also Caci v. Colvin, 2015 WL 9997202, *10 (N.D.N.Y. Dec. 22, 2015) ("Relying on [Curry], [p]laintiff correctly points out that a consultative examiner's report which concludes that a claimant's condition is 'mild' or 'moderate' *without additional*

8

*information* does not allow an ALJ to infer that a claimant is capable of performing the exertional requirements of work. In this case, however, [the consultative examiner's] opinions were supported by her extensive examination of [p]laintiff.") (emphasis added) (citations omitted), report and recommendation adopted, 2016 WL 427098 (N.D.N.Y. Feb. 3, 2016).

Here, Dr. Schwab completed a consulting physical examination, which revealed that plaintiff had a normal gait; could perform a heel-toe walk without difficulty; had a normal stance; used no assistive devices; needed no help changing for the exam or getting on or off the exam table; and was able to rise from the chair without difficulty. Plaintiff demonstrated some limited range of motion in the lumbar spine and ankles, but otherwise his physical examination was unremarkable. Considering Dr. Schwab's physical examination, the Court concludes that his opinion that plaintiff suffered "mild" limitations in bending, lifting, and carrying was not overly vague.

Nevertheless, the Court concludes that the ALJ did not have substantial evidence upon which to base his conclusion that plaintiff could perform all of the functions of sedentary work, which generally requires an ability to be seated throughout most of an eight-hour workday. See 20 C.F.R. § 404.1567(a) ("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

9

As plaintiff points out, an ALJ may not infer exertional capabilities based on the silence of an examining opinion. In Rosa v. Callahan, 168 F.3d 72, 81 (2d Cir. 1999), "the ALJ reasoned that the reports by the consulting physicians did not identify any serious impairments, and that those reports were therefore 'consistent' with a finding that Rosa retained the residual functional capacity to meet the exertional demands of sedentary work." As the Second Circuit explained, however, "[t]hose reports were consistent with this conclusion, however, only to the extent that they were silent on the issue. Indeed, there was no indication in the reports that the consultants intended anything by their silence or that they set out to 'express [an] opinion on [the] subject' of Rosa's sedentary work capacity." Id. (citing Carroll v. Sec. of Health and Hum. Servs., 705 F.2d 638, 643 (2d Cir. 1983)).

In this case, the ALJ failed to point to any medical opinion or medical evidence which tended to establish that plaintiff had the ability to perform all of the exertional demands of sedentary work. Accordingly, the physical RFC finding was unsupported by substantial evidence. "On remand, the ALJ should explain with specificity the relevance of the medical evidence he relies upon when reevaluating the RFC determination." Orchanian v. Colvin, 2015 WL 5167879, *3 (E.D.N.Y. Sept. 4, 2015). If necessary, the ALJ should obtain further treating or consulting physician opinions relating to this issue.

## C. Vocational Expert Testimony

Finally, plaintiff contends that the ALJ erred in failing to obtain vocational expert testimony regarding the degree to which plaintiff's nonexertional limitations would erode his occupational base. The Court notes that the RFC finding is likely to be altered on remand. Thus, the ALJ is directed to obtain vocational expert testimony regarding plaintiff's nonexertional impairments if the RFC finding on remand indicates that nonexertional impairments will "have more than a negligible impact on [plaintiff's] ability to work." Cortright v. Colvin, 2014 WL 4384110, *14 (S.D.N.Y. Aug. 29, 2014).

## V. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 9) is denied and plaintiff's motion (Doc. 7) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:    June 23, 2017
             Rochester, New York.